COPY

FILED

1    MANATT, PHELPS & PHILLIPS, LLP
     EDWARD G. BURG (Bar No. CA 104258)
2    E-mail: eburg@manatt.com
     JESSICA SHPALL (Bar No. CA 265466)
3    E-mail: jshpall@manatt.com
     11355 West Olympic Boulevard
4    Los Angeles, CA 90064-1614
     Telephone: (310) 312-4000
5    Facsimile: (310) 312-4224

10 JUN 29 AM 10: 18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

6    Attorneys for Plaintiff
     D.R., a minor, by and through her Parents and
7    guardians ad litem Courtney R. and Jennifer R.

8
9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11
12   D.R., a minor, by and through her          No. **CV 10  4751-SJO (MANx)**
     parents and guardians ad litem
13   Courtney R. and Jennifer R.,

14                         Plaintiff,

15              vs.

16   ANTELOPE VALLEY UNION HIGH
     SCHOOL DISTRICT, a public entity,
17
                           Defendant.
18

19

20      COMPLAINT FOR VIOLATIONS OF AMERICANS WITH DISABILITIES

21   ACT, SECTION 504 OF REHABILITATION ACT OF 1973, AND UNRUH

22          CIVIL RIGHTS ACT; DEMAND FOR JURY TRIAL

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Complaint

1    Plaintiff D.R., a minor, by and through her Parents and guardians ad

2  litem Courtney R. and Jennifer R., alleges:

3

4    **SUMMARY OF ALLEGATIONS**

5    1.    Plaintiff D.R. ("D.R.") is a 17-year old student who will enter her

6  senior year at Eastside High School in Lancaster in August 2010.  D.R. has

7  Charcot-Marie-Tooth Disease ("CMT"), a genetic neurological disorder that

8  prevents her from using the stairs to access the second floor of her high school — a

9  sprawling newly-constructed campus that opened in August 2009.  D.R.'s

10  disability, however, has no effect on her academic capabilities; she is an "A"

11  student who is neither entitled to nor a recipient of special education services.

12    2.    The school has a series of elevators, but the elevators are kept locked

13  and the District has refused to give D.R. a key to use them.  Without a key, she is

14  unable to independently access the second floor of her high school, where she has

15  classes, where the library and career center are located, and where extra-curricular

16  activities are sometimes held.  The District has attempted to provide D.R. access

17  through a constantly changing series of helpers who themselves have elevator keys,

18  but this effort has been unsuccessful because (1) it denies D.R. *unassisted* access to

19  the second floor when she needs or wants it; (2) it is subject to human error and

20  absences, resulting in D.R. repeatedly being stranded or delayed on the upper or

21  lower floor when she needs to get to the other floor; and (3) it prevents D.R. from

22  making the independent time-management decisions about using school facilities

23  and resources that a young adult needs to make.  By denying D.R. unassisted access

24  to the second floor of her high school, the District has discriminated against D.R.

25  on the basis of her disability.

26

27    **JURISDICTION AND VENUE**

28    3.    This court has original subject matter jurisdiction pursuant to 28

1   U.S.C. § 1331, as this action arises under the following laws of the United States:

2   (a) Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and (b) Title II

3   of the American with Disabilities Act ("ADA") (42 U.S.C. §§ 12131 *et seq.*).

4        4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367

5   over D.R.'s claims under the Unruh Civil Rights Act (Cal. Civ. Code §§ 51 *et seq.*),

6   because the state and federal claims arise from a common nucleus of operative facts

7   and therefore form part of the same case or controversy.

8        5.      Venue is proper in this district under 28 U.S.C. § 1391(b) because

9   D.R. and the District are residents of Lancaster, California, and because a

10  substantial portion of the events described in this complaint occurred on the

11  grounds of Eastside High School in Lancaster, California, within the Central

12  District.

13

14                          **THE PARTIES**

15       6.      D.R. is a 17-year old student who attends Eastside High School, which

16  is part of the Antelope Valley Union High School District.  In the fall of 2010, she

17  will begin her senior year at Eastside High School.  D.R. sues through her parents,

18  Courtney R. ("Mr. R.") and Jennifer R. ("Mrs. R.").

19       7.      Defendant Antelope Valley Union High School District ("District") is

20  a local educational agency organized and existing under the laws of the State of

21  California.  Eastside High School is one of the high schools within the District.

22  The District is a recipient of federal financial assistance under 29 U.S.C. § 794(a).

23

24                   **D.R.'S PHYSICAL DISABILITY**

25       8.      Since childhood D.R. has been diagnosed with Charcot-Marie-Tooth

26  Disease ("CMT").  CMT is a genetic, progressive neurological disorder that affects

27  the feet, legs, hands, and arms of individuals.  Over time, the nerves to the

28  extremities degenerate, weakening the muscles in those areas.  CMT manifests

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

Complaint

1  itself differently in different people and its effects become more debilitating as the

2  person ages.

3      9.    In D.R.'s case, physical activity as simple as standing or walking is

4  oftentimes fatiguing because her calf, leg muscles, and knees are particularly weak.

5  Her hands also become easily fatigued, especially when she is gripping something

6  tightly for an extended period of time, such as a pencil.  When D.R. physically

7  overexerts herself, she experiences stress fatigue that can last for an extended

8  period of time, from a few hours to days.

9      10.   D.R.'s muscle weakness also affects her balance when standing and

10 walking.  Because she is petite, she is particularly susceptible to falling if someone

11 bumps into her.  It is very difficult for D.R. to step up onto a curb unassisted.  If

12 there is no curb cut or ramp, she usually leans onto parked cars or seeks other

13 sources of support.  Due to her disability, D.R. is unable to ascend or descend the

14 stairs between the first and second floors of Eastside High School.

15     11.   As a result of her weak knees, it is particularly difficult for D.R. to pull

16 herself up from a seated position on the ground.  Sometimes she uses a friend's

17 shoulder for support.  When she is alone, D.R. will only sit on the ground if there is

18 a wall close by.  When she needs to get up from the ground, she puts her hands

19 behind her and "climbs" the wall to maneuver herself to a standing position.

20     12.   When she is exposed to cold weather, D.R. often loses sensation in her

21 fingers and hands.  In extreme weather, she can sometimes become temporarily

22 paralyzed.  Because D.R. lives in the Antelope Valley, where weather conditions

23 are extreme, she must be particularly cautious about exposing herself to

24 environmental conditions.

25     13.   Notwithstanding her disability, it is important for D.R. to live a normal

26 and active life to prevent further muscle atrophy.

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Complaint

# **PROCEDURAL HISTORY**

14.     The District knew of D.R.'s physical disability before the 2009/2010 school year, and provided a "504 Service Plan" under Section 504 of the Rehabilitation Act (29 U.S.C. § 794) which included, for example, extra time to pass between classes and an extra set of books so D.R. would not have to haul her books back and forth between school and home.

15.     Eastside High School is a newly-constructed facility located at 3200 East Avenue J-8, in Lancaster.  As such, Eastside High School is subject to federal regulations that require *each part* of the facility to be "readily accessible to and usable by individuals with disabilities." (28 C.F.R. § 35.151(a) [regulations under ADA]; 34 C.F.R. § 104.23(a) [regulations under the Rehabilitation Act].)  The campus first opened to students for the 2009/2010 school year, when D.R. was starting her junior year.  The majority of D.R.'s classes take place in what is known as "The Classroom Building," a 2-story building.  The second story houses several classrooms, the school library, and its career services center.

16.     The school elevators are kept locked and can only be summoned and operated by key.  There are four elevators located throughout the "Classroom Building," each one accessible only from the school's outdoor corridors and walkways.  There are no benches next to the elevators.  Attached hereto as Exhibit A is a campus map of Eastside High School that was provided to D.R. at the beginning of the 2009/2010 school year.

17.     On the day of the Grand Opening of the school grounds, D.R. was left upstairs during the festivities for approximately *ninety minutes*.  Later in the day, Mr. and Mrs. R. expressed their concern to Dr. Joe Kelly, Eastside's new Principal, who asked them to be patient and reassured them that the school was going to work everything out.

18.     When the school year started, the only people with keys to the elevator were the maintenance and security staff, and D.R. had to flag someone down to let

1  her into the elevator.  Because D.R.'s class schedule required her to move between

2  the lower and upper floor several times each day, she would regularly be left

3  waiting for an elevator ride before school, between classes, and after school.  She

4  tried to use her cell phone to call the school office, but oftentimes she was unable to

5  reach a live person.  D.R. would also call her mother, and Mrs. R. would also

6  attempt to call the office and ask the Principal's secretary to radio for security to let

7  D.R. into the elevator.

8      19.    On August 20, 2009, Mrs. R. formally requested a meeting to revise

9  D.R.'s 504 Plan.  Mrs. R. was told that the District would be in touch with her to

10  schedule a meeting and that she would have to wait 30 days to have a meeting

11  scheduled.

12      20.    In the meantime, Mrs. R. managed to alleviate the situation by having

13  copies of the elevator key made for a few of D.R.'s teachers and by securing a

14  medical and elevator pass that would permit D.R. to arrive late to class and leave

15  early.

16      21.    It was not until November 10, 2009 that the District finally convened

17  the 504 Plan meeting for D.R.  At the 504 Plan meeting, D.R. requested that the

18  school provide *any* of the following accommodations: (1) a copy of the elevator

19  key; (2) a copy of the elevator key that D.R. could check out at the beginning of the

20  school day and return at the end of the day; (3) the installation of a keypad in the

21  elevator to ensure that D.R. would have regular access to the elevator; or (4) a full-

22  time elevator operator who would be available whenever D.R. needed access.  D.R.

23  also requested that the school create and implement an emergency response plan for

24  her.

25      22.    At the November 10, 2009 meeting, the District agreed that: (1)

26  Teachers would give D.R. extra time to travel from class to class and allow her to

27  make up any missed work as a result of her mobility issues; (2) Teachers would

28  consider the effects of CMT on her handwriting and give her extra time to warm up

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

Complaint

1  her hands when she was cold; (3) Staff members or teachers would "make the

2  elevator available to D.R." to attend her classes on the second floor; and (4) D.R.

3  would be allowed to go to the office during extreme weather.  The more difficult

4  issues of how elevator access would be provided, emergency planning, and class

5  concerns were postponed for a later meeting.

6      23.    At the later meeting, which took place on December 3, 2009, the

7  District denied each of D.R.'s requests for unassisted elevator access.  The District

8  stated that a key to the elevator was "not educationally necessary."  It denied D.R.'s

9  alternative requests to independently access the elevator, noting that "the school

10  feels that between security and teachers assigned elevator keys, appropriate

11  mobility can be achieved."  The District also provided a copy of its "Emergency

12  Plan," which vaguely promised to provide "appropriate assistance where and when

13  it is needed."

14      24.    The District provided Mrs. R. with a copy of the Antelope Valley

15  SELPA, which contained a statement of a student's rights under the Individuals

16  with Disabilities Education Act ("IDEA").  However, the rights and procedures

17  described in the handout did not apply to D.R. because she was not eligible for or

18  seeking special educational services under IDEA, but rather physical access to the

19  facilities.  Although Mrs. R. asked school administrators for information about how

20  to appeal the District's response to her requests for accommodations for D.R., she

21  was not provided with any grievance procedures that would address the Section 504

22  and ADA physical access issues.

23      25.    On February 12, 2010, after D.R. retained counsel, her counsel wrote

24  to the District on D.R.'s behalf, describing the barriers D.R. had encountered in

25  accessing classes and school activities and requesting nine reasonable

26  accommodations.  Counsel also requested on D.R.'s behalf a copy of the District's

27  Section 504 grievance procedures under 34 C.F.R. § 104.7(a).

28      26.    On February 26, 2010, the District responded by agreeing to meet to

1    discuss counsel's February 12 letter, and provided a copy of the District's Section

2    504 grievance procedures. This was the first time that D.R. or her counsel were

3    given a copy of the Section 504 grievance procedures.

4         27.    In an attempt to resolve informally D.R.'s requests for

5    accommodations, D.R. and her Counsel, along with Mr. and Mrs. R., attended a

6    meeting with the District's General Counsel on March 2, 2010 at Eastside High

7    School. No resolution was reached at this meeting. The District's General Counsel

8    stated that D.R. would have to request another meeting with the "School Site

9    Committee" to resolve the requests for reasonable accommodation.

10        28.    As requested, and as a further part of a continuing attempt to resolve

11   informally the requests for reasonable accommodations, D.R. requested a meeting

12   with the School Site Committee. Along with her parents and her counsel, D.R.

13   attended the requested meeting at Eastside High School on March 17, 2010. At this

14   meeting, a school administrator *read orally* the details of a "Draft Mobility Plan"

15   from a computer screen, but did not provide a written copy to D.R., her parents, or

16   her counsel. D.R.'s counsel stated that they were unable to respond to the District's

17   Draft Mobility Plan without first reviewing it in writing, and the District's General

18   Counsel agreed to send the Plan in writing.

19        29.    The District provided its written Draft Mobility Plan one week later,

20   on March 24, 2010, along with a cover letter requesting a response by "no later than

21   noon on March 29, 2010." The Draft Mobility Plan still rejected D.R.'s request for

22   an elevator key to provide her unassisted access to the elevators. Instead, the

23   District proposed the creation of a newly-titled position called the "Mobility

24   Liaison," who would attempt to provide D.R. with assisted access to the elevators

25   during the school day.

26        30.    On March 26, 2010, D.R., through her counsel, immediately responded

27   in writing to the District's Draft Mobility Plan, describing in details its deficiencies

28   and failure to even address many of D.R.'s requested accommodations. The

1   District never responded to counsel's letter.  Although D.R. did not agree to

2   implementation by the District of its Draft Mobility Plan, the District nonetheless

3   unilaterally implemented it in late March 2010.

4        31.   On June 16, 2010, before filing this complaint, D.R. timely filed a

5   formal Government Claim under Cal. Gov't Code § 910, to the extent required by

6   California law.  The information included in the claim had been previously

7   provided to the District, so the District has had ample opportunity to investigate and

8   resolve this matter, if it was so inclined, before the filing of this complaint.

9

10  ### THE DISTRICT HAS FAILED TO PROVIDE REASONABLE
11  ### ACCOMMODATIONS OR MODIFICATIONS TO D.R. TO ALLOW HER
    ### TO ACCESS HER CLASSES

12       32.   D.R.'s school day begins in a parking lot next to the temporary school

13  office.  Although there are two handicapped parking spaces in the lot, they are

14  routinely full and blocked by cars unloading students.  There is a ramp located

15  between the two handicapped parking spaces, but D.R. cannot regularly use it

16  because reaching it would require her to walk among parked and idling cars, which

17  is unsafe.  Instead, D.R. must walk to the nearest curb and lean on parked cars to

18  maneuver herself up onto the curb.

19       33.   Once D.R. is on the sidewalk, she must walk approximately 512 feet to

20  the 2-story main Classroom Building.  This walk is very taxing for D.R.  There is

21  another parking lot located directly adjacent to the Classroom Building.  It has

22  several handicapped parking spaces that would enable D.R. to enter and exit her

23  mother's car in a safe and accessible manner.  However, this parking lot is kept

24  locked behind what is known as the "delivery gate."  D.R. has requested that she be

25  allowed to use this parking lot, but the District has not permitted her to do so.

26       34.   At the beginning of the 2009/2010 school year, D.R. was enrolled in

27  three advanced placement classes.  Taking such classes reflects positively on D.R.'s

28  academic abilities and progress, increases the likelihood of her being accepted to

1   the college of her choice, and provides the opportunity to earn college credit by

2   taking and passing the advanced placement exams at the end of the school year.  As

3   a result of having to wait for someone to let her into an elevator during the first

4   weeks of school, D.R. was forced to miss significant amounts of class time.

5   Because she could not make up the missed work quickly enough, D.R. was forced

6   her to drop two of her advanced placement classes.

7       35.    Even after transferring into a regular history class, D.R.'s grades

8   suffered because she frequently missed 10 to 45 minutes of class time while waiting

9   for someone to provide her access to the elevator.  On one occasion, during history

10  class, she waited so long that she missed the entire class, including an in-class film.

11  The following day, when the teacher gave a pop quiz on the movie, D.R. again

12  missed most of the class while waiting for someone to provide her access to the

13  elevator.  She could not (and did not) perform well on a pop quiz covering a movie

14  she had missed due to her inability to get to class.

15      36.    D.R.'s class schedule required her to move between the first and

16  second floor on a regular basis.  For example, she was required to: (1) travel to the

17  second floor for first period; (2) travel downstairs for second, third and fourth

18  periods; (3) travel back upstairs for fifth and sixth periods; and (4) return to the first

19  floor at the end of the day.  Thus, for classes only, D.R. was required to use the

20  elevators four times every day.

21      37.    In addition, because the library is upstairs on the second floor, D.R.

22  was unable to use it whenever she wanted to.  Likewise, D.R. was unable to arrive

23  at class early, stay late to talk to her teachers when she wanted or needed to, talk to

24  her peers, or independently make use of other school facilities during lunch, after

25  school, or at other hours.  Instead, D.R. was required to go directly to the elevator

26  and wait for someone to provide her access to the other floor.  Teachers and

27  security officers would often forget D.R. or tell her they were simply too busy with

28  their assignments or other tasks to help her.

38.     Being forced to stand outside waiting for someone to provide access to the elevators posed its own risks to D.R.  Some of the elevator wells are completely exposed to the elements.  On one occasion, she was left outside waiting for the elevator in 40-degree weather for 45 minutes.  It was so cold that D.R. was unable to use her fingers to call for help on her cell phone.  Similarly, waiting for long periods of time while standing aggravates her condition.  But there is nowhere for her to sit while waiting for the elevator, and the District has ignored her request that benches be placed near elevators.

39.     From the end of March to the end of May, when the District unilaterally implemented its Draft Mobility Plan, D.R.'s access issues were not resolved.  The Draft Mobility Plan turns a problem (access to the elevator) with a simple, relatively inexpensive solution (a key) into a maddening, complicated array of steps that has frustrated D.R. and school staff alike.

40.     The Draft Mobility Plan created a newly-titled position called a "Mobility Liaison."  This title has been given to a person who has other duties and commitments.  The Draft Mobility Plan requires D.R. to check-in at the front office by 8:00 a.m., compete with other students for the receptionist's attention, and wait while the receptionist calls for the Mobility Liaison.  In addition, when the Draft Mobility Plan was orally unveiled at the March 17, 2010 meeting, D.R. was instructed that she was not allowed to use her cell phone on campus to call security.

41.     The Draft Mobility Plan is deficient in theory, and is even more deficient as implemented.  It continued to require D.R. to wait while someone with other duties found the time to help her.  It made access between the floors of her school vulnerable to absences of the Mobility Liaison and to human error.  It prevented her from independently accessing her classes and other school resources, and deprived her of flexibility in doing so.  For example, D.R. often had to wait several minutes in the morning to get the receptionist to pay attention to her (because other students and staff demanded her attention at this busy time of the

day) and call for the Mobility Liaison.  On the third day of the implementation of the Draft Mobility Plan—April 1, 2010—the Mobility Liaison was absent.  This required the receptionist to scramble to find someone with a key, such as a security guard, to provide elevator access for D.R.  The Mobility Liaison was absent on a regular basis over the following three weeks.

42.     A new Mobility Liaison appeared on April 20, 2010.  Although somewhat more reliable than the first Mobility Liaison, she also failed to provide adequate access.  For example, on April 29, 2010, the Mobility Liaison did not show up between first and second period, when D.R. needed to get downstairs.  After D.R. used her cell phone to call the office (notwithstanding previous instructions that she should not do so), the Mobility Liaison was dispatched, but D.R. was late to her history class.  Again on May 5, 2010, the Mobility Liaison did not show up between first and second periods.  On May 14, 2010, the Mobility Liaison did not have a key to the elevator and rushed around campus to find one; by the time she located one, D.R. was late to class.

43.     Being forced to wait by the elevator during the passing period also makes it impossible for D.R. to use the restroom between classes.  As a result, she is required to use the class period to take care of her needs, further impeding her access to education.

44.     D.R.'s lack of access will continue into the 2010/2011 school year because two of D.R.'s classes will take place on the second floor, where she will also need to use the library and other resources.

**THE DISTRICT HAS FAILED TO PROVIDE REASONABLE ACCOMMODATIONS OR MODIFICATIONS TO D.R. TO ALLOW HER TO ACCESS NONACADEMIC SERVICES**

45.     Under the District's Draft Mobility Plan, the Mobility Liaison is not made available after-hours and on weekends to allow access to nonacademic services and extra-curricular activities.  Rather, the Draft Mobility Plan vaguely

states that D.R. is required to notify the Mobility Liaison of her desire to participate in such after-hours activities "so that access can be arranged" — with no details as to how such access is to be "arranged."

46.    D.R. was unable to access the library or career services center when she wished — both of which are located on the second floor of Eastside High School — during the 2009/2010 school year.  Taking advantage of these programs will be particularly important to her in the 2010/2011 school year, as she applies to colleges and considers career options.

47.    In addition, D.R. is an active member of the student body and participates in a leadership group called "Lion Leaders."  She was forced to forgo several Lion Leaders activities in the 2009/2010 school year because the meetings are held on the second floor during lunch, which would have required her to travel between floors just to attend the meeting.  D.R. will continue to participate in the Lion Leaders during the 2010/2011 school year.  She is particularly interested in serving the student body by helping during freshman orientation and promoting anti-bullying policies.

48.    D.R. has had to forgo other extra-curricular activities, such as attending mock-trials and after-school symposia.  During the school's open house "Arts Showcase" at the end of the school year, three of the ten programs were located upstairs.  D.R. was not aware of this fact until she arrived that evening and therefore was unable to arrange an escort with a key.  As a result, she was unable to fully participate in the activity.

## THE DISTRICT HAS FAILED TO TAKE STEPS TO ENSURE D.R.'S SAFETY WHILE SHE IS AT SCHOOL

49.    During a fire drill in the fall semester, everyone evacuated down the stairs, but D.R. was left in the hallway to "perish" during the fire drill.  Had this been a real fire, she would have surely perished.  During a subsequent fire drill,

1    D.R. was in a classroom with one of the teachers who has a key to the elevator.
2    When she asked him to evacuate her, he said he wasn't allowed to use the elevators
3    during an emergency, and that she shouldn't worry about it because this wasn't a
4    "real emergency." If the school is unable to provide for D.R.'s needs during a drill,
5    it will certainly be unable to accommodate her should a real emergency occur.
6           50.    The District's Draft Mobility Plan does contain a section entitled
7    "Emergency Plan." It states that the Mobility Liaison will "move toward respective
8    classroom" and will be "familiar with the 'blanket carry.'" This "Plan" still fails to:
9    (1) identify the most efficient route to safety; (2) identify by name the person who
10   will be responsible for ensuring D.R.'s relocation; or (3) provide a contingent plan.

11

12                    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**
13          51.    Whenever a claimant under the Rehabilitation Act or the ADA seeks
14   remedies "that could be redressed to some degree by the IDEA's administrative
15   procedures and remedies" the Ninth Circuit has required the claimant to exhaust
16   administrative remedies under IDEA. (*Robb v. Bethel Sch. Dist. #403*, 308 F.3d
17   1047 [9th Cir. 2002].) Accordingly, and even though D.R. is not eligible for or a
18   recipient of special education services under IDEA, she filed and served under
19   IDEA on March 9, 2010 a Request for Due Process Hearing before the Office of
20   Administrative Hearings. D.R.'s Due Process Request was dismissed for lack of
21   jurisdiction on April 28, 2010. Accordingly, D.R. has exhausted her administrative
22   remedies before bringing this suit.

23

24                            **FIRST CLAIM FOR RELIEF**
25         **SECTION 504 OF REHABILITATION ACT, 29 U.S.C. § 794**
26          52.    D.R. repeats and incorporates by reference the allegations set forth in
27   paragraphs 1 through 51 above.
28          53.    D.R. is a qualified individual with a disability. She has CMT, a

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Complaint

1   physical impairment, that substantially limits her major life activities of, *inter alia*,

2   walking, standing, writing, and performing certain manual tasks.

3       54.    The District provides an array of aids, benefits, and services to its

4   students, including but not limited to: (1) educating them; (2) providing them

5   extracurricular opportunities; (3) preparing them for further education or

6   employment opportunities as young adults after their graduation; and (4) protecting

7   their safety and well-being during the school day and during school-sponsored

8   activities.  As a 17-year old resident of the District and a student at Eastside High

9   School, D.R. is otherwise qualified to receive all of these benefits.

10       55.    D.R. has been excluded from participation in and been denied the

11   benefits of the District's programs solely by reason of her disability.  Because it is

12   new construction, *each part* of the Eastside High School facility — including its

13   elevators — must be readily accessible to and usable by D.R.  The elevators at

14   Eastside High School are not readily accessible to and usable by D.R. because they

15   are kept locked and no key has been provided to D.R.  Further, the District's

16   elevator access policy does not allow D.R. to have unassisted access to the upper

17   floor of her newly-constructed high school, as other students do.  She is prevented

18   from making independent decisions regarding use of the library or the career center,

19   or arriving early to or staying late in her classes because she is required to adhere to

20   a rigid schedule of meeting an adult to provide her access to the elevator to travel

21   between floors.  Due to the District's policy and refusal to supply her with

22   unassisted access to the elevators, she is subject to delays due to unreliability,

23   absence, or human error when she needs to travel between floors, depriving her of

24   classroom time and the ability to participate in extra-curricular activities on the

25   same basis as her peers.  In addition, D.R. has been discriminated against due to the

26   District's requirement that she use an unsafe location for drop-off and pick, and that

27   she walk a long distance from that area to the Classroom Building, when safer and

28   closer access is available but is kept locked by the District behind the delivery gate.

1   The District's failure to provide a thorough and adequate emergency evacuation

2   plan for D.R. means that she is subjected to a benefit that is neither equal to nor as

3   effective as that provided to others.

4       56.    The District is a public school system that receives federal financial

5   assistance.

6       57.    D.R. has identified and requested reasonable and specific ways in

7   which District can accommodate her. The District has failed to thoroughly

8   investigate and to provide the accommodations requested.

9       58.    The threat of irreparable harm is imminent. D.R. will return to

10   Eastside High School for her senior year beginning in August 2010. She will

11   continue to require use of the elevators to access classroom and nonacademic

12   services, will continue to need the most efficient access to the Classroom Building

13   during morning drop-off and afternoon pick-up, and will continue to require a

14   thorough plan to protect her safety in the event of an emergency.

15       59.    D.R. accordingly seeks preliminary and permanent injunctive relief

16   requiring that the District:

17          a.    Cease and desist discriminating against D.R. on the basis of her

18               physical disability;

19

20          b.    Provide an elevator key to D.R. so that she may have unassisted

21               access to and from the upper floor of Eastside High School;

22          c.    Provide access to the drop-off and pick-up area located behind

23               the locked "delivery gate" adjacent to the Classroom Building;

24               and

25

26          d.    Prepare a comprehensive emergency evacuation plan that clearly

27               identifies the most efficient route to safety, identifies by name

28               the person who will be responsible for ensuring D.R.'s

relocation, and provides a contingent plan for use when the route or person is not available.

## SECOND CLAIM FOR RELIEF

### TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, *ET SEQ.*

60.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 51 above.

61.     D.R. is a qualified individual with a disability.  She has CMT, a physical impairment, that substantially limits her major life activities of, *inter alia*, walking, standing, writing, and performing certain manual tasks.

62.     The District provides an array of services, programs, and activities to its students, including but not limited to: (1) educating them; (2) providing them extracurricular opportunities; (3) preparing them for further education or employment opportunities as young adults after their graduation; and (4) protecting their safety and well-being during the school day and during school-sponsored activities.  As a 17-year old resident of the District and a student at Eastside High School, D.R. meets the eligibility requirements for the receipt of services or the participation in the services, programs, and activities provided by the District.

63.     D.R. has been excluded from participation in and been denied the benefits of the District's services, programs, or activities solely by reason of her disability.  Because it is new construction, *each part* of the Eastside High School facility — including its elevators — must be readily accessible to and usable by D.R.  The elevators at Eastside High School are not readily accessible to and usable by D.R. because they are kept locked and no key has been provided to D.R.  Further, the District's elevator access policy does not allow D.R. to have unassisted access to the upper floor of her newly-constructed high school, as other students do.  She is prevented from making independent decisions regarding use of the library or

1    the career center, or arriving early to or staying late in her classes because she is

2    required to adhere to a rigid schedule of meeting an adult to provide her access to

3    the elevator to travel between floors.  Due to the District's policy and refusal to

4    supply her with unassisted access to the elevators, she is subject to delays due to

5    unreliability, absence, or human error when she needs to travel between floors,

6    depriving her of classroom time and the ability to participate in extra-curricular

7    activities on the same basis as her peers.  In addition, D.R. has been discriminated

8    against due to the District's requirement that she use an unsafe location for drop-off

9    and pick, and that she walk a long distance from that area to the Classroom

10   Building, when safer and closer access is available but is kept locked by the District

11   behind the delivery gate.  The District's failure to provide a thorough and adequate

12   emergency evacuation plan for D.R. means that she is subjected to a benefit that is

13   neither equal to nor as effective as that provided to others.

14          64.    The District is a public entity and is subject to Title II of the ADA.

15          65.    D.R. has identified and requested reasonable modifications to the

16   policies, practices, or procedures of the District in order to accommodate her.  The

17   District has failed to thoroughly investigate and to provide the accommodations

18   requested.

19          66.    The threat of irreparable harm is imminent.  D.R. will return to

20   Eastside High School for her senior year beginning in August 2010.  She will

21   continue to require use of the elevators to access classroom and nonacademic

22   services, will continue to need the most efficient access to the Classroom Building

23   during morning drop-off and afternoon pick-up, and will continue to require a

24   thorough plan to protect her safety in the event of an emergency.

25          67.    D.R. accordingly seeks preliminary and permanent injunctive relief

26   requiring that the District:

27                 a.     Cease and desist discriminating against D.R. on the basis of her

physical disability;

b.     Provide an elevator key to D.R. so that she may have unassisted access to and from the upper floor of Eastside High School;

c.     Provide access to the drop-off and pick-up area located behind the locked "delivery gate" adjacent to the Classroom Building; and

d.     Prepare a comprehensive emergency evacuation plan that clearly identifies the most efficient route to safety, identifies by name the person who will be responsible for ensuring D.R.'s relocation, and provides a contingent plan for use when the route or person is not available.

## THIRD CLAIM FOR RELIEF
## UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE § 51

68.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 51 above and paragraphs 60 through 67 above.

69.     The District's violation of the ADA is also a violation of the Unruh Act, under Cal. Civ. Code § 51(f).

70.     Federal law establishes the minimum level of protection afforded the disabled under the Unruh Act. Where California law provides greater protections to the disabled than does federal law, the more protective standard under California law controls under the Unruh Act.

71..     D.R. has a physical disability. She has CMT, a physical disease or condition that affects the neurological system and limits her major life activities of, *inter alia*, walking, standing, writing, and performing certain manual tasks.

72.     The District qualifies as a business establishment for purposes of the

1    Unruh Act.  As described above and as incorporated in this claim for relief, D.R.

2    has been denied full and equal accommodations, advantages, facilities, privileges,

3    or services by the District.

4        73.    The threat of irreparable harm is imminent.  D.R. will return to

5    Eastside High School for her senior year beginning in August 2010.  She will

6    continue to require use of the elevators to access classroom and nonacademic

7    services, will continue to need the most efficient access to the Classroom Building

8    during morning drop-off and afternoon pick-up, and will continue to require a

9    thorough plan to protect her safety in the event of an emergency.

10        74.    D.R. accordingly seeks preliminary and permanent injunctive relief

11    requiring that the District:

12        a.    Cease and desist discriminating against D.R. on the basis of her

13            physical disability;

15        b.    Provide an elevator key to D.R. so that she may have unassisted

16            access to and from the upper floor of Eastside High School;

17        c.    Provide access to the drop-off and pick-up area located behind

18            the locked "delivery gate" adjacent to the Classroom Building;

19            and

21        d.    Prepare a comprehensive emergency evacuation plan that clearly

22            identifies the most efficient route to safety, identifies by name

23            the person who will be responsible for ensuring D.R.'s

24            relocation, and provides a contingent plan for use when the route

25            or person is not available.

26        75.    D.R. is also entitled to statutory damages under the Unruh Act in the

27    minimum amount of $4,000 for each occasion on which she personally encountered

28

1  the violations at Eastside High School.

2

3  WHEREFORE, Plaintiff prays for judgment as follows:

4  ON THE FIRST AND SECOND CLAIMS FOR RELIEF:

5

6  1.  For issuance of preliminary and permanent injunctive relief

7  requiring that the District:

8  a.  Cease and desist discriminating against D.R. on the basis of her

9  physical disability;

10  b.  Provide an elevator key to D.R. so that she may have unassisted

11  access to and from the upper floor of Eastside High School;

12  c.  Provide access to the drop-off and pick-up area located behind

13  the locked "delivery gate" adjacent to the Classroom Building; and

14  d.  Prepare a comprehensive emergency evacuation plan that clearly

15  identifies the most efficient route to safety, identifies by name the person who will

16  be responsible for ensuring D.R.'s relocation, and provides a contingent plan for

17  use when the route or person is not available.

18  2.  For attorneys' fees, interest, and costs as provided by law; and

19  3.  For all such other and further relief as may be awarded by the

20  Court.

21

22

23

24

25

26

27

28

ON THE THIRD CLAIM FOR RELIEF:

1.      For issuance of preliminary and permanent injunctive relief requiring that the District:

a.      Cease and desist discriminating against D.R. on the basis of her physical disability;

b.      Provide an elevator key to D.R. so that she may have unassisted access to and from the upper floor of Eastside High School;

c.      Provide access to the drop-off and pick-up area located behind the locked "delivery gate" adjacent to the Classroom Building; and

d.      Prepare a comprehensive emergency evacuation plan that clearly identifies the most efficient route to safety, identifies by name the person who will be responsible for ensuring D.R.'s relocation, and provides a contingent plan for use when the route or person is not available.

2.      For statutory damages under the Unruh Act in the minimum amount of $4,000 for each occasion on which D.R. personally encountered the violations at Eastside High School;

3.      For attorneys' fees, interest, and costs as provided by law; and

4.      For all such other and further relief as may be awarded by the Court.

Dated:   June 25, 2010                    MANATT, PHELPS & PHILLIPS, LLP

By: _Edward G. Burg_____
   Edward G. Burg
   Attorneys for PLAINTIFF
   D.R., a minor, by and through her
   Parents and guardians ad litem
   Courtney R. and Jennifer R.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury.

Dated:     June 25, 2010                    MANATT, PHELPS & PHILLIPS, LLP


                                           By: _____
                                              Edward G. Burg
                                              Attorneys for PLAINTIFF
                                              D.R., a minor, by and through her
                                              Parents and guardians ad litem
                                              Courtney R. and Jennifer R.

300112223.1

# EXHIBIT A

## First Floor Classrooms – Building C



## Second Floor Classrooms– Building C



## Fine Arts – Building F



◯ = location of elevator

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV10- 4751 SJO (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
MANATT, PHELPS & PHILLIPS, LLP
EDWARD G. BURG (Bar No. CA 104258), eburg@manatt.com
JESSICA SHPALL (Bar No. CA 265466), jshpall@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.R., a minor, by and through her Parents and guardians ad litem Courtney R. and Jennifer R., <br><br> PLAINTIFF(S) <br><br> v. <br><br> ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, a public entity, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV10 4751 -SJO(MANx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): __ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, a public entity__

_____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __MANATT, PHELPS & PHILLIPS___, whose address is __11355 West Olympic Boulevard, Los Angeles, CA  90064-1614 (attn: Jessica Shpall or Edward Burg)__.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___29 JUN 2010___        By: _____

MARILYN DAVIS

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| D.R., a minor, by and through her Parents and guardians ad litem Courtney R. and Jennifer R. | ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, a public entity |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| MANATT, PHELPS & PHILLIPS, LLP     11355 West Olympic Boulevard<br>EDWARD G. BURG (Bar No. CA 104258)     Los Angeles, CA 90064-1614<br>JESSICA SHPALL (Bar No. CA 265466)     Telephone: (310) 312-4000<br>Facsimile: (310) 312-4224 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** No amount stated

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Americans with Disabilities Act, Section 504 of Rehabilitation Act of 1973 (access to education and other services)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty<br>☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☑ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land | ☐ 240 Torts to Land<br>☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 |

**CV10   4751**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Jessica Stipell_   Date _June 25, 2010_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |